**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAKE L. KILLINGS, | CASE NO. 1:12-CV-479 |
| Plaintiff, | MAGISTRATE JUDGE VECCHIARELLI |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff, Jake L. Killings ("Plaintiff"), through his counsel, Kirk B. Roose ("Counsel"), filed an application for attorney's fees, expenses, and costs in the amount of $4,386.80 pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. No. 22.)  Defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner")[1] does not oppose an award under EAJA, but argues that this Court should reduce it.  Plaintiff also seeks a supplemental award of attorney's fees in the amount of $921.90 for services rendered in replying to the Commissioner's response in opposition to his EAJA application.  (Doc. No. 26.)  The Commissioner has not opposed Plaintiff's supplemental requests.

For the reasons set forth below, Plaintiff's motion for EAJA fees is GRANTED in part and DENIED in part; that is, Plaintiff is awarded a total of $4,210.37 to fully satisfy all reasonable attorney's fees, expenses, and costs incurred under EAJA.

---

[1]  On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I. PROCEDURAL HISTORY

In February 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423. (Transcript ("Tr.") 231-33.) After the agency administrative process ended in the Appeals Council declining to review the adverse decision of an administrative law judge ("ALJ"), Plaintiff filed a complaint in this Court. (*See Killings v. Commissioner*, Case No. 1:09-cv-0845 (N.D. Ohio 2009), Complaint, Doc. No. 1.) On August 3, 2009, upon stipulation by the parties, the Court remanded the case pursuant to the fourth sentence of § 205(g) of the Act, 42 U.S.C. § 405(g), to the ALJ for a hearing and a decision. (Tr. 181-83.)

On remand, after conducting hearings in September 2010 and May 2011 (Tr. 29-73, 100-49), the ALJ denied Plaintiff's application on June 8, 2011 (Tr. 10-22). The Appeals Council declined further review on January 6, 2012, and the ALJ's decision became the final decision of the Commissioner. (Tr. 1.) In February 2012, Plaintiff filed a complaint in this Court, requesting review of the ALJ's June 2011 decision. (Doc. No. 1.) On November 6, 2012, this Court reversed the Commissioner's decision and remanded the case to the ALJ for further consideration. (Doc. Nos. 20, 21.)

On February 4, 2013, Plaintiff filed his EAJA application. (Doc. No. 22.) He seeks an initial award of $4,386.80, as follows:

- $4,222.30 for 22.9 hours of services rendered by Counsel between January and November 2012, at a rate of $184.38 per hour;

- $135.00 for 2.7 hours of services rendered by Counsel's appellate assistance, Diana J. Shriver between January and November 2012, at a rate of $50.00 per hour; and

- $29.50 for the cost of copying and mailing the complaint, briefs and EAJA application, based on a total of 118 pages at $0.25 per page.

(Doc. Nos. 22-1, 22-2, 22-3.) In support of his request for Counsel's hourly rate, Plaintiff cited to: (1) an attachment to his EAJA application in which he computed the cost of living increase for EAJA awards for actions filed on or after March 29, 1996 (Doc. No. 22-4); and (2) evidence submitted in support of the EAJA application filed by the plaintiff in *Rodriguez v. Astrue*, No. 3:11-CV-398 – who was also represented by Counsel – to support his request for an hourly rate in excess of $125.00, which Plaintiff incorporated by reference. (Doc. No. 22 at 4). Plaintiff notes that, in *Rodriguez*, this Court found those documents sufficient to support his request for a cost-of-living increase.

On March 5, 2013, the Commissioner filed her response to the EAJA Application. (Doc. No. 25.) Although she does not oppose an award under the EAJA, she argues that this Court should reduce: (1) the hourly rate requested by Counsel; (2) the number of hours Counsel expended in preparing the EAJA application; (3) the amount requested for costs and expenses; and (4) the hourly rate for work performed by Shriver. (*Id.*)

On March 22, 2013, Plaintiff filed his reply, in which he requests a supplemental award of $921.90, representing 5.0 hours of services rendered by Counsel, at a rate of $184.38 per hour, with respect to the Reply. (Doc. No. 26.) Plaintiff attached to his Reply various documents in support of his requested hourly rate, which this Court will discuss in relevant detail herein.

## II. LAW & ANALYSIS

EAJA permits an award of only reasonable attorney's fees. *See* 28 U.S.C.

3

§2412(d)(2)(A). The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *cf. Comm'r, I.N.S. v. Jean,* 496 U.S. 154, 161 (1990) ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*.") The Court will address the Commissioner's objections to the reasonableness of hours expended and billing rate in turn.

### A. The Appropriate EAJA Billing Rate for Attorney's Fees

#### 1. Whether a Cost-of-Living Increase is Appropriate

The EAJA provides that "[t]he amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished," and "fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); *see Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 449-50 (6th Cir. 2009). Here, Plaintiff seeks EAJA fees for Counsel's work at an hourly billing rate of $184.38 per hour—an upward departure from the $125.00 cap – based an increase in the cost of living caused by inflation since 1996.

In requesting an increase beyond the $125.00 per hour rate cap under EAJA, plaintiffs bear the burden of producing appropriate evidence to support the requested increase. *Bryant*, 578 F.3d at 450. That is, plaintiffs "must produce satisfactory

4

evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). It is within the Court's discretion to award EAJA fees at a rate greater than $125.00 per hour.  *See Begley v. Sec'y of Health & Human Servs.*, 966 F.2d 196, 199 (6th Cir.1992). However, the Sixth Circuit has held that the CPI, alone, is insufficient evidence to warrant an award of EAJA fees at a rate greater than $125.00. *Bryant*, 578 F.3d at 450.

In Exhibit 4 to his Application (Doc. No. 22-4), Plaintiff states that the appropriate hourly billing rate under EAJA for services rendered each year is determined by dividing the United States Bureau of Labor and Statistics' Consumer Price Index ("CPI")[2] for the year in which services were rendered by the CPI for March 1996, and then multiplied by $125.00.  *See also Lopez v. Comm'r of Soc. Sec.*, No. 3:08-cv-2148, 2010 WL 1957422, at *3 (N.D. Ohio May 14, 2010) ("The Magistrate has routinely calculated the cost of living adjustment by accounting for increases in the cost of living between the time the $125 fee was enacted and the time that the fee was earned . . . by comparing the CPI from March 1996 . . . to the average annual CPI during the year that counsel rendered his or her services.").  Plaintiff's calculation of his requested cost-of-living increase is based on the "U.S. City Average" for "all items" for "all urban consumers" in 2012, the year in which Counsel rendered services in this case.  Accordingly, Plaintiff explains that the EAJA rate in this case is 229.594 (the CPI for 2012) divided by 155.7

---

[2] The Bureau of Labor and Statistics' CPI calculator may be found online at http:// www.bls.gov/data/#prices (last visited March 29, 2013).

5

(the CPI for March 1996) and then multiplied by $125.00, which equals $184.38.[3]

In her response, the Commissioner argues that Plaintiff has not carried his burden of supporting his request for a cost-of-living increase because: (1) merely citing to the CPI and the rate of inflation is insufficient to merit an increase; (2) Plaintiff failed to specify the documents from *Rodriguez* on which he intended to rely, and, because Plaintiff failed to provide those documents with this EAJA Application, his arguments are waived and this Court should not consider them; and (3) Plaintiff has failed to provide evidence that his requested hourly rate is comparable to rates charged by other attorney practicing Social Security law in this area.

In support of his Reply, Plaintiff provides the following additional evidence:

(1)  A declaration from attorney Dianne R. Newman, in which she states that: (a) she practices only Social Security law, with approximately 75 percent of her practice at the appellate level; (b) a rate of $300 per hour would be "in line with the rates prevailing in the Cleveland area for similar services by lawyers of reasonably comparable skill, experience and reputation"; and (c) "[a] rate of less than $200 per hour would be less than the rates prevailing in the Cleveland area for similar services by lawyers of reasonably comparable skill, experience and reputation" (Doc. No. 26-1);

(2)  A declaration from attorney Marcia Margolius, in which she states that: (a) she has "practiced mainly Social Security law for more than 25 years"; (b) when she seeks fees under the EAJA, she "typically request[s] a rate of $125 per hour . . . for the sake of expediency and to avoid further litigation on a case"; and (c) based on her knowledge of Counsel's work, in her opinion, "the prevailing rate for his services in Social Security cases should exceed $175/hor to $200/hr . . . ." (Doc. No. 26-2);

(3)  A declaration from attorney Bradley J. Davis, in which he states that, in a Social Security case in this Court, he requested an hourly rate of $125 "not because [he] knew it to reflect that current prevailing market rate, but because of the additional time and research which would have been necessary in order to petition for a higher rate more reflective of the prevailing market rate" (Doc. No.

---

[3] These CPI values are not seasonally adjusted.

26-3);

(4) A report from the Ohio State Bar Association titled *The Economics of Law Practice in Ohio, Desktop Reference for 2010*, which indicates that the avergae hourly billing rate of attorneys in the greater Cleveland area in 2010 was $239 (Doc. No. 26-5);

(5) A report from the National Law Journal and ALM Legal Intelligence titled *The Survey of Law Office Economics, 2011 Edition*, reflecting that the value of services rendered by attorneys since 1985 has increased at a rate faster than inflation (Doc. no. 26-6);

(6) Statistics from the Bureau of Labor Statistics ("BLS") reflecting that the average hourly wage of legal secretaries in the Cleveland Metropolitan area has increased from $14.60 in 1999 to $19.70 in 2011 (Doc. No. 26-7); and

(7) The CPI reflecting that the value of legal services has increased over time (Doc. No. 26-8).

As a preliminary matter, this Court rejects the Commissioner's argument that it should not consider Plaintiff's arguments that are based on the evidence attached to Reply. Contrary to the Commissioner's contention, Plaintiff's submission of this evidence does not constitute the raising of a new issue. Rather, the documents respond directly to the Commissioner's argument that Plaintiff has failed to satisfy his burden of proof.

Further, the Commissioner's contention that this Court should not consider the documents in support of Plaintiff's request because the Commissioner has "no way of ascertaining which arguments from the cited documents [in *Rodriguez*] Plaintiff intends to present to the Court" also lacks merit. (Response at 5, Doc. No. 25 at 5.) The plaintiff in *Rodriguez* submitted the documents at issue response to this Court's request for further information in support of his request for fees in excess of $125 per hour. (*See Rodgirguez*, No. 3:11-CV-398, Doc. No. 27.) The issue of plaintiff's evidentiary support

for the cost-of-living increase was the only issue addressed by this Court's order in *Rodriguez*. The documents on which Plaintiff in this case relies were submitted in response to that order. (*See Rodriguez*, No. 3:11-CV-398, Doc. No. 28.) Accordingly, while it likely would have been advisable for Plaintiff to simply attach his evidentiary support to his initial EAJA application, the Commissioner cannot credibly contend that she cannot ascertain which arguments Plaintiff intends to make in this case.

The Commissioner contends that, even if this Court considers Plaintiff's additional evidence, this Court should not grant his request for an increased hourly rate because, since the Court's decision in *Rodriguez*, other courts in this district have rejected that same evidence as insufficient. However, several of the cases to which the Commissioner cites are distinguishable from this case, as Plaintiff has provided evidence in support of his request for a cost-of-living increase that those plaintiffs did not provide. For example, in *De Nunez v. Astrue*, No. 1:11-CV-2285, 2013 WL 60429, *5 (N.D. Ohio Jan. 3, 2013) (Adams, J.), "[i]n order to demonstrate the prevailing market rate," the plaintiff "provided 'The Survey of Law Office Economics, 2011 Edition,' counsel's resumes and the national CPI for legal services." In *Keyes v. Astrue*, No. 1:11-CV-312, 2012 WL 2498892, * 2 (N.D. Ohio June 27, 2012) (Gwin, J.), "[a]part from her insufficient reference to the Consumer Price Index," the plaintiff made "no showing that the practice at the $125 rate is commercially impracticable." *See also Taylor v. Astrue*, No. 1:12-CV-293, 2012 WL 5465989 (N.D. Ohio Nov. 8, 2012) (Gaughan, J.) (noting that the plaintiff's evidence "at best, provides average billing rates for the State of Ohio" that "are not limited to the Cleveland area (or the Northern District of Ohio) and

are not specific to attorneys practicing int he social security field. None of the other evidence submitted by plaintiff adequately addresses this issue"); *Adams v. Astrue*, NO. 5:11-CV-904, 2012 WL 3144829, * 2 (N.D. Ohio July 26, 2012) (Burke, Mag. J.) (In his application for attorney fees, [the plaintiff] relies on the CPI, an assertion that Newman is one of the few attorneys in Northeastern Ohio that practices social security law in the Federal District Court and an Affidavit from attorney Newman setting forth her experience and education. This is insufficient under *Bryant*.").

    Unlike the plaintiffs in those cases, in this case, Plaintiff has submitted evidence not only of the increase in cost and value of legal services in general (Doc. Nos. 26-4, 26-5, 26-6, 26-7), but also of the prevailing hourly rate for attorneys who practice social security law in the Cleveland, Ohio area. The affidavits of Margolius and Newman reflect that the prevailing hourly rate for Cleveland-area social security disability attorneys with similar skill and experience as Counsel would not be less than $200. (Doc. Nos 26-1, 26-2.) Their affidavits, as well as the affidavit of Davis, reflect that, in those cases where they sought only the cap rate of $125, they did so in order to avoid further litigation in their cases. (Doc Nos. 26-1, 26-2, 26-3). Other courts in this district have determined that evidence similar to Plaintiff's evidence is sufficient to support a cost-of-living increase in this context. *See, e.g., Draper v. Comm'r of Soc. Sec.*, No. 3:11-Cv-2287 (Mar. 15, 2013) (Carr, J.) (slip copy); *Kane v. Astrue*, No. 1:10-CV-1874, 2012 WL 5357781, *4 (N.D. Ohio Oct. 31, 2012) (Lioi, J.); *Jaworski v. Astrue*, No. 1:10-CV-2936, 2012 WL 3552634, *2 (N.D. Ohio Aug. 16, 2012) (White, Mag. J.). Accordingly, the Court concludes that Plaintiff's evidence adequately supports a cost-of-living increase in Plaintiff's EAJA fee rate.

9

### 2. Which CPI is the Appropriate Measure

The Commissioner also contends that Plaintiff's calculation should be based on the "Midwest" CPI rather than the "U.S. City Average" CPI. The Court agrees that the "Midwest" CPI appears to be the more appropriate measure of the increase in the cost of living for purposes of EAJA. There is a split among courts regarding which CPI is most appropriate for determining a cost of living increase under EAJA. *See Jawad v. Barnhart*, 370 F. Supp. 2d 1077, 1083-85 (S.D. Cal. 2005) (collecting cases). However, this Court and other courts in this district have generally concluded that the "Midwest" CPI is appropriate, as in this Circuit prevailing parties must show that their requested rates are in line with those prevailing in *the community*, not the nation. *See Jaworski*, 2012 WL 3552634 at *3 ("The Court believes this finding is consistent with the *Bryant* decision . . . "); *Rodriguez v. Astrue*, No. 3:11-CV-398, 2012 WL 2905928, *5 (N.D. Ohio July 16, 2012) (Vecchiarelli, Mag. J.). The calculation for a cost-of-living increase between March 1996 and 2012 based on the "Midwest" CPI for "all items" for "all urban consumers" is 219.100 divided by 151.7 and then multiplied by $125.00, which equals $180.54.[4] Accordingly, Plaintiff has sustained his burden of demonstrating that a cost-of-living increase to an hourly rate of $180.54 for Counsel is reasonable and appropriate.

### B. The Number of Compensable Hours

The Commissioner argues that this Court should reduce the number of compensable hours requested by Plaintiff, for several reasons. This Court addresses

---

[4] A historical index for the Midwest CPI for "all items" for Midwest urban" consumers is available at: http://data.bls.gov/pdq/SurveyOutputServlet?data_tool=dropmap&series_id=CUUR0200SA0,CUUS0200SA0 (last visited Apr.1, 2013).

each of them in turn.

### 1. Time Spent Preparing the EAJA Application

First, the Commissioner argues that Plaintiff requests an unreasonable number of hours for preparing his EAJA petition.  Exhibit 1 to the EAJA Application reflects that Counsel spent 1.9 hours preparing the application and the time schedules attached to it.  (Doc. No. 22-1.)  The Commissioner contends that, with some minor exceptions, the EAJA Application "appears to consist of boilerplate."  (Response at 7, Doc. No. 25 at 7.)  The Commissioner does not, however, indicate what would constitute a reasonable amount of time for the completion of the EAJA application.  Plaintiff responds that, "[c]ustomarily, it takes almost two hours to prepare an EAJA application with all its schedules and exhibits . . . " and notes that this Court has approved similar amounts of hours for this task in the past.  (Reply at 8, Doc. No. 26 at 8.)

The Commissioner does not substantiate her suggestion that the EAJA Application is mostly boilerplate.  Further, even if the application does consist mainly of boilerplate, the Commissioner fails to explain why it should have taken Counsel less than 1.9 hours to prepare the necessary time schedules and insert the information relevant to this case.  Absent further support for her argument, the Commissioner's contention lacks merit.  Accordingly, this Court will not reduce the number of compensable hours spent in preparing the EAJA Application in this matter.

### 2. Time Spent Reviewing Court E-Mail Messages

Second, the Commissioner argues that this Court should reduce the number of hours Plaintiff requests for work performed by Shriver to account for time Shriver spent

reviewing e-mail messages from the Court.  According to the Commissioner, the time Shriver spent reviewing Court e-mail messages is not compensable because it should be subsumed within overhead costs for Counsel's firm.  Counsel generally argues that the reduction is unwarranted, and asserts that, if this Court does reduce Shriver's hours, "a reduction of 1.0 hours would be consistent" with this Court's prior decision.

In evaluating the request for fees for Shriver's activities, the Court is mindful of its prior observation in this context:

> Purely clerical or secretarial tasks, that is, *non-legal* work, should not be billed – even at a paralegal rate – regardless of who performs the work.  For example, dictation and typing are noncompensable, as they are part of the overhead of any law office.  However, activities such as filing a complaint, filing service requests, and filing return-of-service forms are clerical tasks that may be considered sufficiently "legal work" to permit compensation, although any compensation would be at a lesser rate.

*Rodriguez*, 2012 WL 2905928 at *6-7 (internal citations omitted) (emphasis in original).  In *Rodriguez*, this Court deducted time from Shriver's billed hours to account for the noncompensable activity of reviewing e-mail messages from the Court.  *Id*; *see also Kane*, 2012 Wl 5357781 at *5 (finding that the time an appellate assistant spent reviewing court e-mail messages was not compensable).

A review of Exhibit 2 to the EAJA Application reflects that Shriver – whose time is presented in a block-billing format – billed for reviewing court e-mails on: February 28, 2012; March 5, 2012; April 12, 2012; June 5, 2012; August 13, 2012; September 26, 2012; October 12, 2012; and November 6, 2012.  With the exception of two dates – April 12, 2012 and August 13, 2012 – Shriver billed for time spent reviewing Court e-mail messages on days that she also performed other work related to the case.  Accordingly,

Case: 1:12-cv-00479-NAV  Doc #: 27  Filed: 04/09/13  13 of 19.  PageID #: 990

for those days, there is no way to ascertain how long she spent reviewing Court e-mail messages. However, on the days on which she billed only for reviewing e-mail messages from the Court, Shriver billed 0.1 hours each day. The schedule of Shriver's time contains eight entries for reviewing court e-mail messages. Accordingly, this Court will reduce the hours attributed to Shriver by 0.8 hours.

### 3. Shriver's Hourly Rate

Third, the Commissioner argues that this Court should reduce Shriver's hourly rate to $40, rather than the $50 hourly rate requested by Plaintiff. The Commissioner contends that such a deduction would be "consistent with past decisions about [Shriver's] hourly rate." (Response at 8, Doc. No. 25 at 8.) Although none of the cases on which the Commissioner relies discuss the reasonableness of the rate Plaintiff requests for Shriver, the Court recently denied another plaintiff's request for the same $50 hourly rate:

> The Court, however, rejects the $50 hourly rate. [The plaintiff] relies upon the Bureau of Labor Statistics, May 2011 Metropolitan and Non-Metropolitan Employment and Wage Estimates, which indicates that the administrative/legal median hourly wage [is] approximately $20 per hour. Additionally, this Court approved $40 per hour for the same administrative assistant in [other cases].

*Mohr v. Comm'r of Soc. Sec.*, No. 3;11-Cv-2731, 2013 WL 557176, *5 (N.D. Ohio Feb. 21, 2013) (White, Mag. J.).

Here, Plaintiff relies on the same set of statistics to justify Shriver's $50 hourly rate. However, he does not explain why an hourly rate of $50 is necessary for Shriver's hours in this case. He neither provides any information regarding her actual hourly wage, nor offers any other justification for an hourly rate that is more than double the

average hourly wage of a legal secretary in the Cleveland area. Accordingly, this Court will reduce Shriver's hourly rate to $40.

### 4. Copying

Fourth, the Commissioner disputes Plaintiff's characterization of his copying as "expenses" rather than "costs." The Commissioner asserts that the categorization is critical because, under 28 U.S.C. §§ 2414 and 2412(c)(1), an award of costs is paid by the Secretary of the Treasury after certification by the Attorney General, and not from agency funds. Further, the Commissioner argues that this Court should not grant Plaintiff's request for copying expenses at all, or, in the alternative that the requested rate of $0.25 cost per page of copying is excessive. Plaintiff does not address the Commissioner's arguments regarding his request for copying costs.

The Commissioner is correct in asserting that Plaintiff's copying costs should be taxed as costs under § 2412. Section 2412 provides that, "a judgment for costs, *as enumerated in section 1920 of this title*, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." 28 U.S.C. §2412(a)(1) (emphasis added).

Section 1920 includes in its list of costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). As such, "[c]opies obtained only for the convenience of counsel, including extra copies of filed papers and correspondence, are ordinarily not

14

recoverable." *Charboneau v. Severn Trent Labs.*, No. 5:04-CV-116, 2006 WL 897131, *1 (W.D. Mich. Apr. 6, 2006); see *Beck v. Buckeye Pipe Line Servs. Co.*, No. 3:10-CV-319, 2011 WL 3040910, *3 (N.D. Ohio July 25, 2011) (Zouhary, J.) ("[T]he party seeking reimbursement for the photocopying costs has the burden of proving that they were necessary.")  Here, Plaintiff has not provided any information to support his claim for copying costs, except to assert that the expenses "were incurred in connection with this claim.  Copying/printing for Efiled documents is calculated at $.25 per page, 2 copies (plaintiff and file)."  (EAJA Application at Ex. 3, Doc. No. 22-3.)  Accordingly, Plaintiff has not demonstrated that the copies were anything other than extra copies of briefs and other documents filed in this matter, and this Court declines to award Plaintiff's requests for copying expenses.[5]

**C.     Supplemental Award**

Plaintiff seeks compensation for the hours of services rendered by Counsel related to his reply in support of his EAJA Application.  The value of services rendered in defending the propriety of an EAJA award may be compensable under EAJA.  *See Spurlock v. Sullivan*, 790 F. Supp. 979, 982 (N.D. Cal. 1992) (citing *I.N.S. v. Jean*, 496 U.S. 154 (1990)) ("[A]n award of attorney fees under the EAJA should encompass not only the fees incurred in the litigation on the merits, but also the fees incurred by the prevailing party in protecting that fee award in subsequent litigation by the government

---

[5]     Further, this Court notes that, even if it did grant Plaintiff's request for copying expenses, it would reduce the amount requested.  Plaintiff's requested rate – $0.25 per page – is excessive.  This Court is aware that there are public copying facilities that charge $0.10 and $0.11 per page for black and white copies.

15

over the propriety or amount of the EAJA fee award.") However, in this case, this Court concludes that Plaintiff's request is not well taken.

In total, Plaintiff requests compensation for 27.9 hours of time expended by Counsel in this matter.  Of that time, 21.0 hours are associated with Plaintiff's request for review of the Commissioner's final decision by this Court.  Counsel expended 1.9 hours preparing the initial EAJA Application, and an additional 5.0 hours preparing the reply in support of the EAJA Application.  The 5.0 hours devoted to the reply – more than double the number of hours expended on the initial EAJA Application – represent nearly 18 percent of the total hours expended in this case.  The total amount of the hours associated with litigating Counsel's fee and expenses in this case –  6.9 hours – represents more than one-quarter of the total amount of time for which Plaintiff requests compensation.

Were this the first time that Plaintiff's counsel raised the issue of his hourly rate and the evidence necessary to support a cost-of-living increase, this Court might not question the request in this case.  These issues, however, are not new to Counsel, as he has frequently litigated the issue of his hourly rate in this Court.  *See, e.g., Jones v. Comm'r of Soc. Sec.*, No. 1:10-CV-2568 (N.D. Ohio Sept. 11, 2012), at p.4 (Nugent, J.) (unpublished opinion) (noting that Counsel is "well-versed on the issue of attorney fees under the EAJA"); *English v. Comm'r of Soc. Sec.*, No. 1:11-CV-2794 (N.D. Ohio Aug. 31, 2012) at pp. 7-8 (Adams, J.) (unpublished opinion) (reviewing filings in this Court and noting that, in 11 cases, Counsel devoted a total of 156.45 hours on the issue of his hourly rate).

Here, Plaintiff requests compensation for hours Counsel expended on an issue

that Counsel has frequently litigated in this Court.  The affidavits that accompany Plaintiff's reply brief are dated November 15, 2012; July 26, 2012; and July 30, 2012.[6]  (Doc. Nos. 26-1, 26-2, 26-3.)   A review of this Court's docket reflects that Counsel has filed these affidavits – as well as the other documents in support of the reply brief – at least three other times prior to filing the reply brief in this case.  *See Montanez v. Comm'r*, No. 1:11-CV-2475 at Doc. No. 25 (March 1, 2013); *Teeter v. Comm'r*, No. 1;11-CV-2376 at Doc. No. 31 (Feb. 4, 2013); *Kincaid v. Comm'r*, No. 1:12-CV-385 at Doc. No. 18 (Nov. 21, 2012).  Further, because Plaintiff does not itemize the time Counsel expended on preparing the reply brief – he alleges only that Counsel spent five hours on March 22, 2103 preparing and researching the brief – this Court cannot ascertain precisely how that time was spent.  The purpose of the EAJA is to "eliminate for the average person the financial disincentive to challenge unreasonable government action." *Comm'r v. Jean*, 496 U.S. 154, 163 (1990).  That purpose, however, "does not permit a prevailing party's attorney to proceed as if he has a blank check in hand, nor does it permit Counsel to request fees multiple times for the research and preparation of a brief that is largely a cut and paste from case to case."  *Jones*, No. 1:10-CV-2568 at 4.  Because it is not apparent that Counsel was required to perform work either researching a new issue or preparing new documents to support Plaintiff's EAJA Application, this Court denies Plaintiff's request for a supplemental award under the EAJA for the time

---

[6]    The affidavits that accompany Plaintiff's reply are photocopies.  Further, two of the affidavits predate this Court's opinion remanding the case to the Commissioner.  Accordingly, it does not appear that Counsel was required to draft and/or obtain newly executed originals to support Plaintiff's Reply.

17

Counsel expended preparing the reply brief in this case.

**D .    Calculation of Plaintiff's EAJA Award**

Plaintiff's counsel expended a total of 22.9 hours on services rendered through Plaintiff's initial EAJA application.  Plaintiff will be compensation for those hours at a rate of $180.54 per hour, for a total of $4,134.37.

Plaintiff's counsel expended a total of 5.0 hours on services rendered with respect to the reply in support of the EAJA Application.  This Court denies Plaintiff's request for compensation for that time.

Shriver expended a total of 2.7 hours on services rendered through Plaintiff's initial EAJA Application, and Plaintiff requested that he be compensated at a rate of $50.00 per hour for her services.  This Court concludes that 0.8 hours of that time was noncompensable, and that $40.00 per hour is a reasonable rate for Shriver's services. Accordingly, Plaintiff will be compensated for 1.9 hours at a rate of $40.00 per hour, for a total of $76.00.

Finally, this Court denies Plaintiff's request for costs associated with copying in this case.  Accordingly, as outlined below, Plaintiff's total award under the EAJA is $4,210.37.  This award is reasonable and appropriate under the circumstances of this case.

|  | **Hours Requested** | **Hours Approved** | **Rate/Value Requested** | **Rate/Value Approved** | **Award Approved** |
|---|---|---|---|---|---|
| **Counsel** (initial app.) | 22.9 | 22.9 | $184.38 | $180.54 | $4,134.37 |
| **Counsel** (reply brief) | 5.0 | 0.0 | $184.38 | Denied | Denied |

| Shriver | 2.7 | 1.9 | $50.00 | $40.00 | $76.00 |
| Costs |  |  | $29.50 | Denied | Denied |
| **Totals** | 47.5 | 24.8 |  |  | **$4,210.37** |

E.   **To Whom the EAJA Award Should Be Made Payable**

Plaintiff indicated in his initial EAJA application that he assigned his right to be paid to his attorney pursuant to a fee agreement.  However, pursuant to *Astrue v. Ratliff, 130 S. Ct. 2521, 177 L. Ed. 2d 91 (2010)*, any EAJA award should be made payable to Plaintiff and not his attorney so that any pre-existing debt owed by Plaintiff to the government may be subject to administrative off-set.  Accordingly, counsel first shall determine whether Plaintiff owes a pre-existing debt subject to offset; if there is no pre-existing debt or the debt is less than the amount of the EAJA fee award, the balance of the EAJA fee award shall be made payable to Plaintiff's counsel per the assignment in the record.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff is awarded a total of $4,210.37, of which $11.80 is for costs pursuant to 28 U.S.C. § 2412(a)(1), to fully satisfy all reasonable attorney's fees, expenses, and costs incurred under EAJA.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: April 10, 2013